**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JANNIES LAN, individually and on behalf of all others similarly situated,** | **CIVIL ACTION** |
| **Plaintiff,** | **CASE NO.** |
| **v.** | **CLASS/COLLECTIVE ACTION** |
| **STADIUM CASINO RE, LLC d/b/a LIVE! CASINO & HOTEL PHILADELPHIA,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | ***Electronically Filed*** |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Jannies Lan ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class and Collective Action Complaint against Defendant Stadium Casino RE, LLC d/b/a Live! Casino & Hotel Philadelphia ("Defendant"), and hereby states and alleges as follows:

## NATURE OF THE CLAIMS

1. Plaintiff and all similarly situated employees work or worked for Defendant at its casino ("Live! Casino & Hotel") located at 900 Packer Avenue in Philadelphia, Pennsylvania.

2. Pursuant to its casino-wide policies and procedures, Defendant failed to pay Plaintiff, and other similarly situated employees, the federal and state minimum wage rate for all hours worked and overtime for all hours worked over 40 in a single workweek.

3. Defendant principally paid table games dealers like Plaintiff and other similarly situated workers through the tip credit. In other words, Defendant relied on the Fair Labor Standards Act ("FLSA") and Pennsylvania Minimum Wage Act's ("PMWA") minimum wage exception that allows an employer to credit some of the tips an employee earns against the minimum wage the employee is owed if certain requirements are met. For the reasons explained

below, Defendant did not meet those requirements and cannot claim a tip credit against its obligation to pay Plaintiff and similarly situated workers the minimum wage.

4. First, Defendant failed to properly inform its tipped employees of the required tip credit provisions under both federal and state law prior to paying a sub-minimum direct cash wage. As a result, Defendant may not claim a tip credit and owes Plaintiff and all similarly situated workers the difference between their direct cash wage paid by Defendant and the applicable minimum wage for all hours worked. Likewise, because Defendant paid a sub-minimum wage and claimed a tip credit for both regular and overtime hours, the failure to give tip credit notice gives rise to both unpaid minimum wages and overtime wages. This violation applies to all of Defendant's tipped workers.

5. Second, Defendant's use of the tip credit is unlawful under Pennsylvania law because of the way Defendant structures its table games dealers' work. The typical string (or schedule) for a table games dealer is 80 minutes of time dealing followed by a 20-minute rest period. All of this time is "on-the-clock" because the dealers remain under Defendant's control for the duration of the so-called rest period. Defendant takes a tip credit for all of this time.

6. Dealers are practically unable to leave the premises during this 20-minute rest period and Defendant precludes them from working on the floor. As a result, dealers are precluded from making tips during these 20-minute periods because they are not at the tables and they are, in fact, prevented from being at the tables. Despite this, Defendant claims a tip credit for this time. In reality, the 20-minute rest period benefits Defendant because it ensures that the dealer can continue doing quick, mistake-free math while dealing.

7. There is a different string for table games dealers who deal craps. Craps is a more complicated game, so the time dealing is 60 minutes followed by the 20-minute period off the

casino floor. The same rules outlined above apply to the craps dealers. They are practically unable to leave the premises, they cannot earn tips, and the breaks benefit the casino in that it increases the craps dealers' efficiency. Thus, before accounting for idle time, pre- and post-shift time, and waiting time, table games dealers who deal craps are automatically spending 25% of their time on non-tipped work.

8. Dealers are spending, at least, 20% of their workweek on non-tip-producing work where the company precludes them from earning tips, before consideration of idle time, pre-shift meetings, and other pre- and post-shift work. The same is true of craps dealers except it is, at least, 25% of their workweek on non-tip-producing work where the company precludes them from earning tips, before consideration of idle time, pre-shift meetings, and other pre- and post-shift work. All of this time is being paid at the tip credit rate. Not only does Pennsylvania law make clear that this time cannot be time for which a tip credit is claimed, it also transforms these dealers and craps dealers into non-tipped workers who do not customarily and regularly receive tips for more than 20% and 25% of the time they are working for Defendant, respectively. Because all of this time is also included in the tip pool, it means the Defendant cannot claim a tip credit for any of the time included in the pool.

9. Third, Defendant has retained dealer tips to defray its own expenses by requiring dealers to work off-the-clock each night and paying them tips from the pool to perform the administrative function of counting tips. Because the Defendant would otherwise be required to cover the cost of this business expense, the use of dealer tips to do so is the employer's retention of tips. This means the Defendant cannot claim a tip credit for any workweek when pooled tips were used to pay dealers for the administrative task of counting tips so that they might be redistributed.

## JURISDICTION AND VENUE

10. Federal question jurisdiction over the FLSA claims of Plaintiff and others similarly situated is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

11. Supplemental jurisdiction over the state law claims of Plaintiff and others similarly situated is based on 28 U.S.C. § 1367, in that the state law claims are so related to the FLSA claims that they form part of the same case and controversy.

12. There is also subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1332(d) in that there are at least 100 putative class members, there is minimal diversity, and there is at least $5,000,000 in controversy.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

14. Plaintiff is a resident of Philadelphia, Pennsylvania (Philadelphia County).

15. Plaintiff was hired by Defendant in July 2021 to work as a table games dealer. Between July 2021 and the end of 2022, Plaintiff worked as a table games dealer earning a direct cash wage of less than $7.25 per hour and was required to pool her tips with other dealers. Plaintiff then became a dual rate supervisor (a "dual job" wherein she worked as a table games dealer and a floor supervisor) where she was paid a direct cash wage less than $7.25 per hour for her table games dealer role and was required to pool her tips with other dealers. In January 2025, she returned to working solely as a table games dealer where she was required to pool her tips with other dealers. For example, during two workweeks between January 15, 2024 and January 28, 2024, Plaintiff worked 24.20 regular hours as a table games dealer and was paid a direct cash wage

of $7.00 per hour plus tips from the dealer tip pool. This pay rate is below the minimum wage under both federal and Pennsylvania law. Plaintiff's Consent to Join is attached as Exhibit 1.

16. Defendant is a limited liability corporation organized under the laws of Delaware, with its principal place of business located in the Commonwealth of Pennsylvania. Defendant is registered to do business and does conduct business in the Commonwealth of Pennsylvania.

17. At all relevant times, Defendant has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has had an annual gross volume of sales made or business done of not less than $500,000.00.

18. At all relevant times, Defendant was the employer of Plaintiff, and all other similarly situated employees working at the casino property.

## OVERVIEW OF PLAINTIFF'S CLAIMS

### No Entitlement to Tip Credit Due to Failure to Provide Tip Credit Notice

#### *FLSA Requirements*

19. An employer may, in certain circumstances, take a "tip credit" toward its minimum wage obligations for tipped employees. Pursuant to the explicit language of the FLSA, a tip credit may not be taken "with respect to any tipped employee unless such employee has been informed by the employer of the provisions of [29 U.S.C. § 203(m)], and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2).

20. The Department of Labor's interpreting regulations concerning Section 3(m) provide as follows:

> [A]n employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.: [1] The amount of the cash wage that is to be paid to the tipped employee by the employer; [2] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; [3] that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and [4] that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

29 C.F.R. § 531.59(b).

21. Defendant employs Plaintiff and other similarly situated tipped employees by paying a sub-minimum direct cash wage but failed to properly notify them of the tip credit requirements of the FLSA.

22. Specifically, Plaintiff and other similarly situated tipped employees are not informed, in advance of Defendant's use of the tip credit, of: (1) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendant, which amount may not exceed the value of the tips actually received the employee; (2) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (3) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

23. As Defendant has failed to properly inform Plaintiff and other similarly situated tipped employees of the required tip credit provisions, Defendant has willfully violated the FLSA by failing and refusing to pay all minimum wages due and owing.

***<u>Pennsylvania's Requirements</u>***

24. Under the PMWA, an employer may, in certain circumstances, take a "tip credit" toward its state minimum wage obligations for tipped employees. Pursuant to the explicit language

of the PMWA, a tip credit may not be taken "with respect to any tipped employe[e] unless: (1) [s]uch employe[e] has been informed by the employer of the provisions of [43 P.S. § 333.103(d)]; (2) [a]ll tips received by such employe[e] have been retained by the employe[e] … except that this subsection shall not be construed to prohibit the pooling of tips among employe[e]s who customarily and regularly receive tips." 43 P.S. § 333.103(d).

25. 43 P.S. § 333.103(d) provides in relevant part: "In determining the hourly wage an employer is required to pay a tipped employe[e], the amount paid such employe[e] by his or her employer shall be an amount equal to: (i) the cash wage paid the employe[e] which for the purposes of the determination shall be not less than the cash wage required to be paid the employe[e] on the date immediately prior to the effective date of this subparagraph; and (ii) an additional amount on account of the tips received by the employe[e] which is equal to the difference between the wage specified in subparagraph (i) and the wage in effect under section 4 of this act. The additional amount on account of tips may not exceed the value of tips actually received by the employe[e]."

26. In addition, Pennsylvania law mandates that "[t]he amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week." 34 Pa. Code § 231.34.

27. Defendant employs Plaintiff and other similarly situated tipped employees and pays them a direct cash wage that is less than the PMWA's state minimum wage ($7.25 per hour) but failed to properly notify them of the tip credit requirements of the PMWA. Despite this violation of the PMWA's tip credit notice provisions, Defendant has taken a tip credit toward its obligations to pay the state minimum wage to Plaintiff and all other similarly situated tipped employees.

28. Specifically, Plaintiff and other similarly situated employees are not informed, in advance of Defendant's use of the tip credit, of the additional amount by which their wages are

increased on account of the tip credit claimed by Defendant, and that such amount may not exceed the value of the tips actually received by them.

29. Likewise, Defendant does not report, in writing, to Plaintiff and other similarly situated employees, the amount per hour which it claims as a tip credit against its obligation to pay the PMWA's required state minimum wage each time it is changed from the amount per hour taken in the preceding week.

30. As a result of Defendant's above-described PMWA's violations, Plaintiff and other similarly situated employees are entitled to recover from Defendant the amount of the sum of (1) the tip credit taken (i.e., the difference between the direct cash wage and the required state minimum wage), which is the amount of the unpaid minimum wages, and (2) a reasonable attorneys' fee and costs of this action.

**<u>Defendant's Tip Pooling and Scheduling Practices</u>**

31. Defendant operates a casino. Defendant's casino features dozens of table games (*e.g.*, blackjack, roulette, craps, *etc*.), which are staffed by table games dealers.

32. Defendant employs hundreds of table games dealers at any given time, most of whom, like Plaintiff, are paid a direct cash wage below the federal and Pennsylvania minimum wage of $7.25 per hour. In other words, Defendant pays table games dealers pursuant to the tip credit provisions of the FLSA and PWMA and then uses customer tips to make up the difference between the sub-minimum direct cash wage and the minimum wage.

33. Defendant pays table games dealers the tip credit rate for all hours worked in the dealer capacity. All hours worked are also included in the dealer tip pool.

34. Defendant also sets the "string" (*i.e.*, the working schedule during shifts) for table games dealers. The normal string for table games dealers is 80 minutes of time at the table games

followed by 20 minutes of mandated time away from the table games and off the casino floor. Table games dealers are not permitted to work the tables during these 20-minute periods and are thus unable to earn tips. That said, they remain on-the-clock, under the casino's control, and could be—at the casino's discretion—called back to the floor at any time. Table games dealers are unable to leave the casino property during these short 20-minute periods. Defendant acknowledges the time is compensable and the time is paid, but it is paid at the tip credit rate. Before accounting for pre- and post-shift work, any idle time, and any other non-tip producing time, table games dealers are automatically precluded from earning tips during at least 20% of their workweek. Despite this, all of the time is paid at the tip credit rate.

35. Defendant also sets the "string" for table games dealers who deal craps. The normal string for the craps dealers is 60 minutes of time at the table games followed by a 20-minute period off the casino floor. Table games dealers are not permitted to work the tables during these 20-minute periods and are thus unable to earn tips. Table games dealers are unable to leave the casino property during these short 20-minute periods. Defendant acknowledges the time is compensable and the time is paid, but it is paid at the tip credit rate. Before accounting for pre- and post-shift work, any idle time, and any other non-tip producing time, table games dealers who deal craps are automatically precluded from earning tips during 25% of their workweek. Despite this, all of the time is paid at the tip credit rate.

36. Plaintiff and other table games dealers also spend a considerable amount of their time idle waiting for customers at the tables, attending pre- and post-shift meetings, and other non-tip producing tasks. Defendant pays all of this time at the tip credit rate.

37. All of the time spent by the dealers who deal standard table games and the dealers who deal craps is included in the tip pool.

38. As a matter of course and logic, tables games dealers spend well in excess of 20% of their working time paid at the tip credit rate doing tasks for which they could not possibly be paid tips. Defendant knows and has known dealers are spending more than 20% of their time on non-tip producing tasks and has chosen to pay require them to pull their tips and to pay them pursuant to the tip credit anyway.

**Defendant's Tip Pooling and Scheduling Practices Violate the PMWA**

39. Under the PMWA, an employer may, in certain circumstances, take a "tip credit" toward its state minimum wage obligations for tipped employees. Pursuant to the explicit language of the PMWA, a tip credit may not be taken "with respect to any tipped employe[e] unless: (1) [s]uch employe[e] has been informed by the employer of the provisions of [43 P.S. § 333.103(d)]; (2) [a]ll tips received by such employe[e] have been retained by the employe[e] … except that this subsection shall not be construed to prohibit the pooling of tips among employe[e]s who customarily and regularly receive tips." 43 P.S. § 333.103(d).

40. Pennsylvania implemented a regulation adopting the U.S. Department of Labor's regulation on tipped employees and dual jobs, 29 CFR § 531.56, as it existed on May 7, 2022. 34 Pa. Code § 231.111. That version of the regulation can be found in the Federal Register. *See* Tip Regulations Under the Fair Labor Standards Act (FLSA); Partial Withdrawal, 86 FR 60114-01, 2021 WL 5014043, October 29, 2021. The October 2021 version of the regulation governs the analysis of tip credit eligible work under the PMWA.[1]

[1] The U.S. Department of Labor's 2021 regulation at 29 CFR § 531.56 was invalidated by the Fifth Circuit in light of the Supreme Court's decision in *Loper-Bright*. That does not change the ability of the Pennsylvania Department of Labor to rely on the October 2021 version of the regulation. *See*, *e.g.*, *Bayada Nurses, Inc. v. Dep't of Labor & Indus.*, 8 A.3d 866, 883 (Pa. 2010) (holding that while the FLSA provides a floor under which national wage protections cannot drop, Pennsylvania may enact and impose more generous wage provisions than the FLSA).

41. The regulation provides that "an employee is engaged in a tipped occupation when the employee performs work that is part of the tipped occupation." 29 C.F.R. § 531.56(f). The regulation defines "work that is part of the tipped occupation" both "work that produces tips" and "work that directly supports the tip-producing work, if the directly supporting work is not performed for a substantial amount of time." 29 C.F.R. § 531.56(f)(1)(i-ii).

42. The regulation defines "tip-producing work" as "any work performed by a tipped employee that provides service to customers for which the tipped employee receives tips." 29 C.F.R. § 531.56(f)(2).

43. The regulation defines "work that is not part of the tipped occupation" to be "any work that does not provide service to customers for which tipped employees receive tips, and does not directly support tip-producing work." 29 C.F.R. § 531.56(f)(5). An employer cannot claim a tip credit for work that is not part of a tipped occupation. *Id*.

44. The regulation defines "directly supporting work" as "work performed by a tipped employee in preparation of or to otherwise assist tip-producing customer service work." 29 C.F.R. § 531.56(f)(3)(i). The regulation provides examples of this type of directly supporting work, which includes tasks focused on "preparation of or to otherwise assist tip-producing customer service work and when they do not provide service to customers." 29 C.F.R. § 531.56(f)(3)(ii). The examples all have the common characteristic of being tasks related to cleaning or refilling or otherwise preparing items that the customer will need or use doing the customer experience like a server rolling silverware or a nail technician cleaning the pedicure tub.

45. The regulation defines "substantial amount of time"—*i.e.*, the permissible threshold for "directly supporting work" before the employer can no longer claim a tip credit—as "an employee has performed work for a substantial amount of time if … [t]he directly supporting work

exceeds a 20 percent workweek tolerance, which is calculated by determining 20 percent of the hours in the workweek for which the employer has taken a tip credit. The employer cannot take a tip credit for any time spent on directly supporting work that exceeds the 20 percent tolerance." 29 C.F.R. § 531.56(f)(4).

46. Here, Defendant requires Plaintiff and other dealers to work for less than minimum wage for—at a bare minimum just based on the strings set by the company—20% of their time for regular table games dealers and 25% of their time for craps dealers, before consideration of pre- and post-shift work, idle time, and time spent on the casino floor but not at the tables.

47. Defendant's 20-minute mandated rest period is not part of the tipped occupation for table games dealers. Defendant precludes the dealers from earning tips during this window. Further, the mandated 20-minute off the casino floor is purely for the benefit of Defendant so that the dealers do not make mental mistakes costing the casino money when dealing. The time is not the dealer's own time—it is not long enough to be a *bona fide* meal period and the dealers are unable to leave the property (*e.g.*, it can take five minutes just to walk across the casino floor). Defendant recognizes this because the time is on-the-clock and paid, albeit at the sub-minimum wage, tip credit rate. Quixotically, Defendant pays dealers the tip credit rate for this time, but they simultaneously preclude them from earning tips because they are not permitted to be on the casino floor. As a result, Defendant requires the dealers to stay on-the-clock for less than minimum wage while they await their time to return to the floor to do the job that allows them to earn tips from patrons. Thus, under the PMWA, the 20-minute mandated rest periods are not part of the tipped occupation and must be paid at the full minimum wage. Further, because under the PMWA, the 20-minute mandated rest periods are not part of the tipped occupation and cannot be paid at the tip credit, the table games dealers are also not customarily and regularly tipped employees with respect

to this time. This precludes Defendant from taking a tip credit for any of the hours included in the pool while this scheduling practice was in place. 43 P.S. § 333.103(d).

48. Further, even if Defendant's mandated 20-minute break period during which table games dealers are precluded from receiving tips could be construed as directly supporting work, it regardless exceeds the permissible 20% threshold and reaches the same result. Every day, craps dealers spend at least 25% of their time on mandated 20-minute rest breaks during which they are precluded from receiving tips from patrons. This exceeds the 20% threshold and means that all the time exceeding that 20% threshold is not tip credit eligible and is not part of the tipped occupation. The table games dealers are also not customarily and regularly tipped employees with respect to time exceeding the 20% threshold. This precludes Defendant from taking a tip credit for any of the hours included in the pool while this scheduling practice was in place. 43 P.S. § 333.103(d).

**Defendant's Tip Pooling and Scheduling Practices Violate the FLSA**

49. For many of the same reasons, Defendant's practice likewise violated the FLSA.

50. Courts look to the Department of Labor's historic interpretation of the dual jobs regulation to preclude an employer from claiming a tip credit for time spent on non-tip producing work that exceeds 20% of the worker's time on-the-clock. Despite the Fifth Circuit's vacatur of the 2021 regulation, Courts have "recently found that the 1988 Department of Labor Guidance and the 80/20 Rule are still persuasive authorities." *Thomas v. Morning Chef, LLC*, No. 2:23-CV-02719, 2025 WL 2721177, *5 (S.D. Ohio Sept. 24, 2025); *see also Hallman v. Flagship Rest. Grp., LLC*, 762 F. Supp. 3d 830, 841 (D. Neb. 2025) (After the Fifth Circuit's vacatur of the 2021 regulation, "the 2019 version of the Dual Jobs Regulation and pre-80/20 Rule circuit caselaw control.").

51. Here, for the reasons stated above, Defendant required table games dealers to spend

at least 20% of their working time on mandated rest periods during which the dealer is precluded from earning tips. The table games dealers also have significant idle time at the tables during which they are not earning tips as well as pre- and post-shift time spent on tasks like dealer meetings. The same is true of table games dealers who deal craps for whom that minimum amount of time is automatically 25% of their working time. Defendant is not entitled to a tip credit for any of that time. For the same reasons, the table games dealers are not "tipped employees" and not "customarily and regularly tipped" for purposes of the time exceeding the 20% threshold. 29 U.S.C. § 203(m), (t). This precludes Defendant from taking a tip credit for any of the hours included in the pool while this scheduling practice was in place. *Id*.

**Defendant Retains Dealers' Tips to**
**Defray Administrative Costs in Violation of the PMWA and the FLSA**

52. Defendant requires its dealers to pool all of their tips. In other words, when a dealer is handed a tip from a patron, the dealer places that tip into the tip (or toke) box where it is pooled with all others dealers' tips.

53. Every day, Defendant requires the dealers to count the tips to determine the toke rate (i.e., the amount paid to dealers in tips per hour worked that day).

54. Up to five dealers (who are also members of the toke committee) receive approximately $25 each for counting the tips each night.

55. These payments come directly from the table games dealers' tip pool.

56. Defendant does not pay the dealers for this work, at least not from its own coffers. Instead, Defendant requires the dealers to pay their colleagues for this work out of the tip pool.

57. Put differently, one of Defendant's necessary business expenses is the cost of counting and redistributing dealer tips. However, instead of paying that administrative expense itself, it has syphoned more money from the dealer's tip pool to do so. This is plainly unlawful

under the PMWA. *See* 34 Pa. Code § 231.113(a) ("An employer that permits patrons to pay tips by credit card or other non-cash forms of payment shall pay the tipped employee the full amount of the tip authorized by the patron and may not deduct credit card payment or other processing fees or costs that the credit card or other company may charge to the employer.").

58. For the same reasons this conduct violates the PMWA, it likewise violates the FLSA. *See* 29 U.S.C. § 203(m)(2)(B) ("An employer may not keep tips received by its employees for any purposes…").

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

59. Plaintiff brings Count I, the PMWA claim arising out of Defendant's violation of the PMWA's tip credit requirements with respect to dealers as a Rule 23 class action:

> **PMWA Unlawful Tip Pool Class:** All persons currently or formerly employed by Defendant as table games dealers from three (3) years prior to the filing of the Class and Collective Action Complaint to the present.

60. Plaintiff brings Count II, the FLSA claim arising out of Defendant's violation of the FLSA's tip credit requirements with respect to dealers as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and the following collective:

> **FLSA Unlawful Tip Pool Collective:** All persons currently or formerly employed by Defendant as table games dealers from three (3) years prior to the filing of the Class and Collective Action Complaint to the present.

61. Plaintiff brings Count III, the PMWA claim arising out of Defendant's violation of the PMWA's tip credit notice provisions as a Rule 23 class action:

> **PMWA Unlawful Tip Credit Notice Class:** All persons currently or formerly employed by Defendant and paid a direct cash wage of less than $7.25 per hour from three (3) years prior to the filing of the Class and Collective Action Complaint to the present.

62. Plaintiff brings Count IV, the FLSA claim arising out of Defendant's violation of the FLSA's tip credit notice provisions as an "opt-in" collective action pursuant to 29 U.S.C. §

216(b) on behalf of herself and the following collective:

> **FLSA Unlawful Tip Credit Notice Collective:** All persons currently or formerly employed by Defendant and paid a direct cash wage of less than $7.25 per hour from three (3) years prior to the filing of the Class and Collective Action Complaint to the present.

63. Plaintiff's PMWA claims satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

64. The classes contain, at least, hundreds of class members. As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this action through regular mail, e-mail, and/or posting of an approved notice. All of the information necessary to provide this notice is in the possession of Defendant.

65. There are common questions of fact and law to the classes that predominate over any questions affecting only individual class members. The questions of law and fact common to the classes arising from Defendant's actions include, without limitation, the following:

a. Whether Defendant required table games dealers to pool their tips;

b. Whether Defendant paid some table games dealers pursuant to the tip credit;

c. Whether Defendant required table games dealers to count tips and paid them for it from the tip pool;

d. Whether Defendant required table games dealers to spend, at least, 20% of their time on mandated rest periods

e. Whether Defendant required craps dealers to spend, at least 25% of their time on mandated rest periods;

f. Whether this mandated on-the-clock rest time can be paid pursuant to the tip credit when it exceeds 20% of the workweek;

g. Whether Defendant's inclusion of the mandated rest time in the tip pool

voided the tip pool and the tip credit for pool participants;

h. Whether Defendant's use of tip pool funds to defray its own expenses of operating a tip pool voided the tip pool and the tip credit for pool participants; and

i. Whether Defendant provided Plaintiff and class members sufficient notice of their intent to claim a tip credit prior to paying a sub-minimum direct cash wage.

66. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

67. Plaintiff's claims are typical of those of the respective classes in that class members have been employed in the same or similar positions as Plaintiff and were subject to the same or similar unlawful practices as Plaintiff.

68. A class action is the superior method for the fair and efficient adjudication of Plaintiff's claims. Defendant has acted or refused to act on grounds generally applicable to the classes. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

69. Plaintiff is an adequate representative because she is a member of each of the classes she seeks to represent, and her interests do not conflict with the interests of the members of those classes. The interests of the members of the classes will be fairly and adequately protected by Plaintiff and his undersigned counsel, who are experienced prosecuting complex wage and

hour, employment, and class action litigation.

70. Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in consistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## COUNT I

## Violation of the Pennsylvania Minimum Wage Act

***Arising Out of Defendant's Tip Pooling and Scheduling Practices, and Defendant's Retention of Table Games Dealers' Tips to Defray Administrative Costs***

71. Plaintiff re-alleges the allegations set forth above.

72. Plaintiff and the putative class members have been entitled to the rights, protections, and benefits provided under the PMWA, 43 P.S. §§ 333.101, *et seq*.

73. The PMWA regulates, among other things, the payment of minimum wage and overtime wages by employers, subject to limited exceptions not applicable herein, and provide or have provided for during part or all of the applicable limitations period for a minimum wage consistent with that provided for under federal law. 43 P.S. §§ 333.104(a)-(c).

74. During all times relevant to this action, Defendant was the "employer" of Plaintiff and the class members within the meaning of the PMWA. 43 P.S. § 333.103(g).

75. During all times relevant to this action, Plaintiff and the class members were Defendant's "employees" within the meaning of the PMWA. 43 P.S. § 333.103(h).

76. Plaintiff and the class members are covered, non-exempt employees within the meaning of the PMWA. Accordingly, employees are entitled to be paid at least minimum wage

for all hours worked in each workweek. 43 P.S. §§ 333.104(a)-(a.1).

77. Pursuant to the PMWA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all hours worked in excess of 40 hours in a workweek. 43 P.S. § 333.104(c).

78. Although the PMWA contains some exceptions (or exemptions) from the minimum wage and overtime pay obligations, none of those exceptions (or exemptions) applies here. 43 P.S. § 333.105.

79. Plaintiff and the class members are victims of uniformly applied scheduling and tip pooling policy that resulted in the failure to pay minimum wages and overtime wages for each member of the tip pool due to the forfeiture of the tip credit.

80. Defendant violated the PMWA by failing to pay Plaintiff and all others similarly situated minimum wages for all hours worked in a workweek. Defendant also violated the PMWA by failing to pay overtime at 1.5 times the regular rate (of at least minimum wage) for all hours over 40 in a workweek.

81. Specifically, as set out at length above, Defendant paid Plaintiff and other similarly situated table games dealers pursuant to the tip credit and required them to pool their tips.

82. Defendant then required table games dealers to perform excessive non-tipped work exceeding 20-25% of their workweek. Defendant was not entitled to claim a tip credit for that time but did so anyway. Defendant also required those workers to be paid tips from the tip pool for that time despite that work not constituting part of the tipped occupation and those workers not being customarily and regularly tipped employees for that work. As a result, Defendant created and mandated participation in an unlawful tip pool. Defendant thus forfeits the tip credit each worker required to participate in the pool. Likewise, Defendant retained tip pool funds using them to

defray the costs of the pool, which Defendant requires. This also results in forfeiture of the tip credit and mandates return of the misappropriated funds. *See* 43 P.S. § 333.103(d); 34 Pa. Code § 231.111; 29 CFR 531.56 (in effect as of May 7, 2022).

83. Plaintiff and the class members are entitled to damages equal to all unpaid minimum and overtime wages due within three (3) years preceding the filing of this Complaint, plus periods of equitable tolling, less any amount actually paid to the employees by Defendant. 43 P.S. § 333.113.

84. Plaintiff and the class members are also entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate plus penalties. 43 P.S. § 333.112.

85. Defendant is also liable to Plaintiff and the class members for costs and reasonable attorney fees incurred in this action. 43 P.S. § 333.113.

WHEREFORE, Plaintiff prays for the following relief:

a. Award Plaintiff and class members damages for unpaid minimum wages, misappropriated tips, and any other compensatory damages available under 43 P.S. § 333.113;

b. Award Plaintiff and class members pre-judgment and post-judgment interest and penalties as provided by 43 P.S. § 333.112;

c. Award Plaintiff's and class members' counsel attorneys' fees and costs as allowed by 43 P.S. § 333.113; and

d. Award Plaintiff and the class members such other relief as the Court deems fair and equitable.

## COUNT II

## Violation of the Fair Labor Standards Act

***Arising Out of Defendant's Tip Pooling and Scheduling Practices, and Defendant's Retention of Table Games Dealers' Tips to Defray Administrative Costs***

86. Plaintiff re-alleges the allegations set forth above.

87. At all times material herein, Plaintiff and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

88. The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

89. Defendant is subject to the minimum wage and overtime pay requirements of the FLSA because they are enterprises engaged in interstate commerce and its employees are engaged in commerce.

90. During all relevant times to this action, Defendant was the "employer" of Plaintiff and all similarly situated employees within the meaning of the FLSA. 29 U.S.C. § 203(d).

91. During all times relevant to this action, Plaintiff and all similarly situated employees were Defendant's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

92. Plaintiff and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA. Accordingly, Plaintiff and all similarly situated employees must be paid minimum wage in accordance with 29 U.S.C. § 206.

93. Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. 29 U.S.C. § 207(a).

94. Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none of those exceptions (or exemptions) applies here.

95. Plaintiff and putative class members are victims of uniformly applied scheduling and tip pooling policy that resulted in the failure to pay minimum wages and overtime wages for each member of the tip pool due to the forfeiture of the tip credit.

96. Plaintiff and all similarly situated employees are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three (3) years preceding the filing of the initial Complaint, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard of whether its conduct was prohibited by the FLSA.

97. Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant acted in good faith or with reasonable grounds in failing to pay minimum wage and overtime compensation, Plaintiff and all similarly situated employees are entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

98. As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld by Defendant from Plaintiff and all similarly situated employees. Accordingly, pursuant to 29 U.S.C. § 216(b), Defendant is liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

99. Defendant violated the FLSA by failing to pay Plaintiff and all others similarly situated minimum wages for all hours worked in a workweek.

100. Specifically, as set out at length above, Defendant paid Plaintiff and other similarly situated table games dealers pursuant to the tip credit and required them to pool their tips.

101. Defendant then required table games dealers to perform excessive non-tipped work exceeding 20-25% of their workweek. Defendant was not entitled to claim a tip credit for that time but did so anyway. Defendant also required those workers to be paid tips from the tip pool for that time despite that work not constituting part of the tipped occupation and those workers not being customarily and regularly tipped employees for that work. As a result, Defendant created and mandated participation in an unlawful tip pool. Likewise, Defendant retained tip pool funds by using them to defray the costs of the pool, which Defendant requires. This also results in forfeiture of the tip credit and mandates return of the misappropriated tips. 29 U.S.C. § 203(m), 216(b).

WHEREFORE, Plaintiff prays for the following relief:

a. Award Plaintiff and all similarly situated employees damages for unpaid minimum wages and overtime wages under 29 U.S.C. § 216(b);

b. Award Plaintiff and all similarly situated employees damages for misappropriated tips under 29 U.S.C. § 216(b);

c. Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

d. Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e. Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

f. Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

**COUNT III**

**Violation of the Pennsylvania Minimum Wage Act**

***Arising Out of Defendant's Failure to Give Notice of Intent to Claim a Tip Credit***

102. Plaintiff re-alleges the allegations set forth above.

103. Defendant violated the PMWA by failing to pay Plaintiff and all others similarly situated minimum wages for all hours worked in a workweek.

104. Specifically, Defendant paid Plaintiff and others similarly situated below the state minimum wage rate without complying with the "tip credit" rules required for an employer to pay less than the state minimum wage.

105. In particular, Plaintiff and other similarly situated employees were not informed, in advance of Defendant's use of the tip credit, of the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendant, or that such amount may not exceed the value of the tips actually received by the employee.

106. Likewise, Defendant did not report, in writing, to Plaintiff and other similarly situated employees, the amount per hour which it claimed as a tip credit against its obligation to pay the PMWA's required state minimum wage each time it was changed from the amount per hour taken in the preceding week.

107. Defendant failed to comply with the notification requirements set forth within the express language of the PMWA and supporting regulations. 43 P.S. § 333.103(d); 34 Pa. Code § 231.34.

108. As Defendant has failed to properly inform Plaintiff and other similarly situated tipped employees of the required tip credit provisions and are not entitled to claim a tip credit,

Defendant has willfully violated state law by failing and refusing to pay all state minimum wages due and owing to Plaintiff and all other similarly situated employees.

109. Defendant's practice was to unlawfully and willfully fail to comply with the requirements for their entitlement to a tip credit and therefore, Plaintiff and the similarly situated tipped employees were not properly paid state minimum wages pursuant to the PMWA.

110. WHEREFORE, Plaintiff prays for the following relief:

a. Award Plaintiff and class members damages for unpaid minimum wages under 43 P.S. § 333.113;

b. Award Plaintiff and class members pre-judgment and post-judgment interest and penalties as provided by 43 P.S. § 333.112;

c. Award Plaintiff's and class members' counsel attorneys' fees and costs as allowed by 43 P.S. § 333.113; and

d. Award Plaintiff and the class members such other relief as the Court deems fair and equitable.

**COUNT IV**

**Violation of the Fair Labor Standards Act**

***Arising Out of Defendant's Failure to Give Notice of Intent to Claim a Tip Credit***

111. Plaintiff re-alleges the allegations set forth above.

112. Defendant violated the FLSA by failing to pay Plaintiff and all others similarly situated minimum wages for all hours worked in a workweek.

113. Specifically, Defendant paid Plaintiff and others similarly situated below the federal minimum wage rate without complying with the "tip credit" rules required for an employer to pay less than the state minimum wage.

114. In particular, Plaintiff and other similarly situated employees were not informed, in

advance of Defendant's use of the tip credit, of: (1) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendant, which amount may not exceed the value of the tips actually received by the employee; (2) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (3) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

115. Defendant failed to comply with the notification requirements set forth within the express language of the FLSA and supporting regulations. 29 U.S.C. § 203(m)(2); 29 CFR § 531.59(b).

116. As Defendant has failed to properly inform Plaintiff and other similarly situated tipped employees of the required tip credit provisions and are not entitled to claim a tip credit, Defendant has willfully violated federal law by failing and refusing to pay all minimum wages due and owing to Plaintiff and all other similarly situated employees.

117. Defendant's practice unlawfully and willfully failed to comply with the requirements for its entitlement to claim a tip credit and therefore, Plaintiff and the similarly situated tipped employees were not properly paid minimum wages pursuant to the FLSA. In addition, because Defendant was not entitled to claim a tip credit, Plaintiff and similarly situated employees are entitled to be paid overtime hours at a tip credit overtime rate.

WHEREFORE, Plaintiff prays for the following relief:

a. Award Plaintiff and all similarly situated employees damages for unpaid minimum wages and overtime wages under 29 U.S.C. § 216(b);

b. Award Plaintiff and all similarly situated employees damages for misappropriated

tips under 29 U.S.C. § 216(b);

c. Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

d. Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e. Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

f. Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial as to all claims so triable.

Dated: November 9, 2026

**WINEBRAKE & SANTILLO, LLC**
R. Andrew Santillo, Esq. (93041)
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025
Telephone: (215) 884-2491
Facsimile: (215) 884-2492
asantillo@winebrakelaw.com

**STUEVE SIEGEL HANSON LLP**
George A. Hanson, Esq., *pro hac vice* forthcoming
Alexander T. Ricke, Esq., *pro hac vice* forthcoming
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com

**McCLELLAND LAW FIRM, P.C.**
Ryan L. McClelland, Esq., *pro hac vice* forthcoming
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068-1170
Telephone: (816) 781-0002
Facsimile: (816) 781-1984
ryan@mcclellandlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JANNIES LAN, individually and on behalf of all others similarly situated,** | **CIVIL ACTION** |
| **Plaintiff,** | **CASE NO.** |
| **v.** | **CLASS/COLLECTIVE ACTION** |
| **STADIUM CASINO RE, LLC d/b/a LIVE! CASINO & HOTEL PHILADELPHIA,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | ***Electronically Filed*** |

**CONSENT TO JOIN**
**Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b)**

**I CONSENT TO JOIN THIS LAWSUIT** as a Party Plaintiff seeking unpaid wages and/or overtime against Defendant Stadium Casino Re, LLC d/b/a Live! Casino & Hotel Philadelphia, and any other associated entities ("Defendants"). If this case does not proceed collectively, I also consent to join any subsequent action against any Defendant(s) for unpaid wages and/or overtime. By joining this lawsuit, I designate the Named Plaintiff(s) as my representatives, and allow them, to the fullest extent possible, to make decisions on my behalf concerning the case, the method and manner of conducting the case, including settlement, the entering of an agreement with Plaintiff's Counsel regarding payment of attorneys' fees and court costs, and all other matters pertaining to the this lawsuit to the fullest extent permitted by law. I understand that I will be bound by any ruling, settlement, or judgment whether favorable or unfavorable. For purposes of this lawsuit, I choose to be represented by Stueve Siegel Hanson LLP and McClelland Law Firm, P.C., and any other attorneys with whom they may associate.

11/07/2026
Date

[signature]
Signature

Jannies Lan
Full Legal Name (print)